**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| SUSAN HAYES                                    * | |
|                                                                *  | |
|             Plaintiff                                * | |
|                                                                * | |
| v.                                                        *     | Civil No. PJM 04-3372 |
|                                                                * | |
| GORDON R. ENGLAND,                  * | |
| SECRETARY OF THE NAVY          * | |
|                                                                * | |
|             Defendant                           * | |

## **OPINION**

Susan Hayes has sued Gordon R. England, Secretary of the Navy, in four counts. Three of the counts allege violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.: Count I (failure to promote based on gender); Count II (discriminatory pay based on gender); and Count IV (retaliation). The remaining count, Count III, alleges violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d).

The Secretary has filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. Hayes argues, and the Court agrees, that because the Secretary has cited evidence outside the four corners of the Complaint, his Motion should be treated as a Motion for Summary Judgment. *See* Fed. R. Civ. P. 12(b). Having treated it so, the Court concludes that the Secretary's Motion for Summary Judgment should be GRANTED. [1]

---

[1] Hayes has filed an Affidavit pursuant to Fed. R. Civ. P. 56(f), seeking leave to take additional discovery before the Court rules on the Motion for Summary Judgment. She has not, however, identified any facts not presently available to her that could only be obtained through discovery. The sole information she seeks pertains to the duties of Dennis Holden, whom she apparently

I.

In July 1991 Hayes was hired as a Supervisory Accountant in the Comptroller Department at the Indian Head Division of the Naval Service Warfare Center (IHD-NSWC) in Indian Head, Maryland.

Her initial pay grade was GS-11. By April 1995 she had reached the GS-13 level. In March 2000 she became Acting Director of the Financial Services Division, still at the GS-13 level.

In April 1996 Richard G. Sharek became Comptroller at IHD-NSWC and began to undertake a reorganization of his department. In July 2000 he announced a plan that would include only two divisions: A Managerial Accounting and Financial Systems Division to be headed by Hayes and a Budget and Progress Analysis Division to be headed by Dennis Holden. Sharek thereafter sought approval to upgrade both Hayes and Holden's positions to the GS-14 level.

High-level upgrades for IHD-NSWC personnel must be approved by a promotion board consisting of senior management officials and the Center's Executive Director, and must thereafter be submitted to Human Resources for appropriate classification. Not all proposals submitted to the promotion board are approved.

---

intends to cite as a comparator in connection with Counts II and III of her Complaint. But this information has already been provided by the Secretary among the 31 exhibits that accompany his Motion. In any case, as the text of the Opinion sets forth, Holden quite simply is not a comparator with Hayes, and no further information from the Secretary would alter that fact. Accordingly, Hayes's request for discovery pursuant to Rule 56(f) will be DENIED. See Dachman v. Shalala, No. 00-1641, 2001 WL 533760 (4th Cir. May 18, 2001).

In January 2000, Sharek – who was not a member of the promotion board – submitted Holden's position, that of Budget Director, but not Hayes's – to the promotion board for possible elevation to the GS-14 level. He submitted Holden's position at that time rather than Hayes's because, in his words, he felt that:

> the chance of obtaining a promotion for Mr. Holden at this time was better than Ms. Hayes because of his education background [2] and the nature of his position. Ms. Hayes had not yet received her Associate Degree, and due to the nature of her position she did not have the same responsibility and visibility on station with senior management as Mr. Holden.

Even so, while making his pitch for Holden, Sharek advised the promotion board that he would also be seeking a promotion for Hayes. Indeed, after Holden got his promotion, in March 2001 Sharek submitted a "high grade justification package" to the board on behalf of Hayes. Over the next year, Sharek also provided the board with follow-up information relative to Hayes's possible promotion. No promotion for Hayes, however, was ever approved. At the same time, the promotion board never advised Sharek that his proposal for Hayes had been rejected.

The nature of Hayes and Holden's positions and the quality of their performance invite comparison.

Both Hayes, as head of the Managerial and Financial System and Holden, as head of the Budget and Process Analysis Division, were Division Directors.

Both help develop and carry out pertinent policies, attempt to foster positive working environments, develop short-range and long-range objectives, supervise subordinates, and make

---

[2] Holden held a Master's Degree in Public Financial Management.

appropriate work adjustments and cost/manpower/time estimates for budgetary and work planning purposes.

Hayes' position is classified in the 510 Accounting Series. The Director of Financial Services is responsible for planning and processing (through subordinates) hundreds of specific accounting transactions daily; preparing monthly and quarterly financial statements; maintaining the customer order subsidiary; processing dealer invoices; maintaining general and subsidiary ledgers; processing travel, payroll and related accounting; and providing technical guidance and advice to the Comptroller relative to financial management systems, including possible systems modification and problem-solving. Overall, Hayes' Performance Appraisal for the period 7/1/01 through 6/30/02 was positive.

Holden's position is classified in the 560 Budget Series. As Supervisory Budget Analyst he is responsible for planning and operating a comprehensive budget system; providing leadership and guidance to the Comptroller and Activity in the execution of their financial management obligations; overseeing implementation of the budget; interfacing with various support systems at IHD/NSWC; and maintaining contacts with other government agencies, including the Office of the Navy Comptroller in the Office of the Secretary of Defense, as well as with personnel from private organizations. Like Hayes, Holden also received an overall positive Performance Appraisal for the period 7/1/01 to 6/30/02.

Despite Hayes' favorable performance for the referenced period, in fact her tenure as Division Director gave rise to certain issues arose regarding her interpersonal skills with employees. In November 2001 Sharek learned from other department heads at the Center that they were concerned about communications and customer service within his department. He therefore

engaged an outside consultant, William Richardson, to conduct an "environmental scan" of the department in order to determine the "root causes" of the problem.  In or about April 2002, Richardson reported back to Sharek that he had found "major" management problems, which he described as "terminal," stating that "stress [was] off the chart" and that "fear [was] running rampant."  Richardson singled out Hayes as the primary cause of these problems.

In May 2002, based largely on Richardson's report, Sharek temporarily detailed Hayes to NAVSEA Command Headquarters at the Navy Yard in Washington.  Hayes's pay or grade level did not change and, indeed, while at NAVSEA she received a favorable performance appraisal.  Hayes, however, was anxious to return to Indian Head such that eventually, when a GS-13 Management Analyst Position was established at IHD/NSWC, she applied for it and was selected.  Although Sharek expressed concern over Hayes's return based on the results of Richardson's earlier "environmental scan," at all times while she was on detail to NAVSEA as well as after her return to Indian Head, Hayes's promotion package remained pending before the promotion board.

II.

In the present litigation, Hayes contends that she was not promoted to grade GS-14 because of her gender whereas Holden, a male, obtained such a promotion.  She also claims that, although she performed substantially the same duties as Holden, in fact supervising more people than he, she was paid less.  Finally she claims that, in retaliation for complaining about the discrimination she believed she was being subjected to, she was unfairly re-assigned to NAVSEA at the Washington Navy Yard.

III.

A party is entitled to summary judgment if the evidence in the record "show[s] that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in her favor, such inferences must "fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *Thompson Everett, Inc. v. National Cable Adver., L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995). Summary judgment procedure "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citation omitted). Trial judges have an "affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex*, 477 U.S. at 323-324). A court should enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Where the plaintiff fails to meet this burden, the defendant should not be required to undergo "the considerable expense of preparing for and participating in a trial." *Hayes v. Hambruch*, 841 F. Supp. 706, 709 (D. Md. 1994) (Harvey, J.), *aff'd,* 64 F.3d 657 (4th Cir. 1995).

Even though intent is important in employment discrimination cases, the statutory purpose of summary judgment applies in no lesser degree to these types of cases than to commercial or other areas of litigation. *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion"). In the employment

discrimination context, a subjective, even if genuine, belief of discrimination will not shield a non-moving plaintiff from a grant of summary judgment. *See Goldberg v. B. Green and Co.*, 836 F.2d 845, 848 (4th Cir. 1988).

IV.

To prove disparate treatment under Title VII, a plaintiff has the burden of establishing discriminatory intent. This can be met either by presenting direct evidence of discriminatory animus, or through utilization of the indirect burden-shifting proof scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Since Hayes has offered no direct evidence of discriminatory animus on Sharek's part, this case is properly analyzed under the three-part *McDonnell Douglas* framework.

Under *McDonnell Douglas*, to create an inference of discrimination, the plaintiff must first establish a *prima facie* case of discrimination. *Id*. The central focus of the inquiry is whether the employer has treated "some people less favorably than others because of their race, color, religion, sex or national origin." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (quoting *Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)).

If the plaintiff establishes a *prima facie* case, a presumption of discrimination arises, which the employer may rebut by articulating a legitimate non-discriminatory reason for its employment decision. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The employer's burden is merely one of production, not persuasion. *Id*. at 255-256. If the employer meets this burden, the presumption raised by the plaintiff's *prima facie* case is rebutted and the factual inquiry proceeds to a "new level of specificity." *Id*. at 255.

At that juncture, the plaintiff would have to prove that "the legitimate reasons offered by the agency were not its true reasons, but were a pretext for discrimination." *Id.* at 253; *see also Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989). In proving pretext, the plaintiff would have to show not only that the employer's proffered reason was false, but that discrimination was the real reason for the employer's action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-508 (1993). The ultimate burden of showing that the employer intentionally discriminated against her remains at all times with the plaintiff. *Burdine*, 450 U.S. at 253. Even if the plaintiff demonstrates a *prima facie* case and sufficient pretext, however, the defendant will still be entitled to judgment as a matter of law if "no rational factfinder could conclude that the action was discriminatory." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000); *see also Gillins v. Berkeley Elec. Coop., Inc.*, 148 F.3d 413, 416-17 (4th Cir. 1998) (explaining that the plaintiff must develop some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action).

V.

Hayes contends that Sharek promoted Holden, a male, to a GS-14 level, but not her, even though she was qualified for and interested in such a promotion. The Secretary responds that it is the high grade promotion board, not Sharek, that is responsible for promotion decisions, but that in any event there was a legitimate non-discriminatory reason for advancing Holden before her.

Assuming *arguendo* that Hayes has set forth a *prima facie* case of gender discrimination insofar as failure to promote is concerned, the Court proceeds directly to the Secretary's proffered legitimate non-discriminatory reason.

Sharek has stated on affidavit that he sought promotions to GS-14 for both Hayes and Holden. While he submitted the Budget Officer's position held by Holden first, he did so, he says, because of Holden's superior educational background (he held a Master's Degree in Public Financial Management, whereas Hayes had not yet received her Associate Degree) and because of the nature of Holden's position *vis-a-vis* that of Hayes. ("[S]he did not have the same responsibilities and visibility on station with senior management as Mr. Holden.")

Even then, according to Sharek, while making his presentation to the promotion board on behalf of Holden, he informed it that he would also be seeking a promotion for Hayes and in March 2001 he did just that; he submitted a request to the board that Hayes be promoted to a GS-14. He followed that up by supplying additional information in support of Hayes' elevation.

The promotion board is comprised of senior management officials and the Center's Executive Director. Sharek was not (and presumably is still not) a member. After the board approves an employee's classification to a higher pay grade, the Human Resources Division must also sign off. According to Sharek, he has yet to hear from the promotion board that his request on behalf of Hayes has been rejected.

Against this factual background, the Court evaluates Hayes's claim that Sharek failed to promote her because she is a female.

The Court is satisfied that the Secretary has articulated a legitimate, non-discriminatory reason for Hayes's "non-promotion." Quite simply, Holden's credentials, educational and otherwise, were superior to hers. In consequence, Hayes must adduce evidence from which it can plausibly be inferred that this reason was a pretext for alleged discrimination. *See*

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989).

In that regard, "a reason cannot be proved to be 'a pretext <u>for discrimination</u>' unless it is shown <u>both</u> that the reason was false, <u>and</u> that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (citation omitted) (emphases in original).

The record amply demonstrates that the Secretary's proffered reason was not false, that Sharek made good faith efforts to get Hayes a promotion to GS-14. Beyond that, the record is totally devoid of any suggestion that Hayes did not get the promotion <u>because of her gender</u>. While Hayes may believe and proclaim otherwise, the Fourth Circuit has held that "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." *Williams v. Cerberonics*, 871 F.2d 452, 456 (4th Cir. 1989) (citing *Gairola v. Virginia Dep't of Gen. Servs.*, 753 F.2d 1281, 1288 (4th Cir. 1985)).

As a matter of law, Hayes has failed to show that she was denied a promotion because of illegal gender discrimination. The Court grants the Secretary's Motion for Summary Judgment on Count I, Hayes's failure to promote claim.

VI.

Hayes also claims she was denied pay comparable to Holden's in violation of both Title VII (Count II) and the Equal Pay Act (Count III). For practical purposes, insofar as wage discrimination based on gender is concerned, the elements of a *prima facie* case are substantially the same under Title VII and the Equal Pay Act. *See Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1994):

A plaintiff may assert claims based on unequal pay for equal work under both the Equal Pay Act and Title VII. Plaintiffs bringing claims under the Equal Pay Act or Title VII must establish a *prima facie* case of discrimination. Under the Equal Pay Act, the plaintiff must show that an employer has paid different wages to employees of opposite sexes for equal work in jobs which require equal skill, effort and responsibility and which are performed under similar working conditions. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L. Ed. 2d 1 (1974); *Fowler v. Land Management Groupe, Inc.*, 978 F.2d 158, 161 (4th Cir. 1992). A plaintiff may make her *prima facie* case by comparing her salary to that of her predecessor or successor. 29 C.F.R. § 1620.13(b)(2), (4) and (5). Under Title VII, a *prima facie* case of sex discrimination requires showing a connection between sex and the adverse employment decision. "The burden of establishing a *prima facie* case of disparate treatment is not onerous." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207, (1981). The plaintiff may establish a *prima facie* case by demonstrating that she is female, i.e., a member of a protected class, and that the job she occupied was similar to higher paying jobs occupied by males. *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992). Under the disparate treatment model of a Title VII action, "there is a relaxed standard of similarity between male and female-occupied jobs, but a plaintiff has the [ultimate] burden of proving an intent to discriminate on the basis of sex." *Id.* at 1526.

Hayes contends that compared to Holden she was doing "substantially equal work, [which] required substantially equal skill, effort and responsibility." The Secretary argues that Hayes and Holden performed different work and that he is a GS-14, whereas she is a GS-13, and this is so because the Center's promotion board approved his advancement to GS-14 but has not yet approved hers. [3]

As a matter of law, the Court agrees with the Secretary.

---

[3] The Court understands that the pay differential between Hayes (GS-510-13) and Holden (GS-560-14) amounts to $1,802.00 annually.

Again, Hayes ignores the differences between her educational background and that of Holden, as well as the description of their respective positions and their respective performance rating factors and grades. Not only does Hayes lack an advanced degree, whereas Holden has a Master's Degree; their position descriptions and rating factors indicate that Holden, as Budget Officer, has more direct interface on a regular basis with senior managers on financial management issues. He is a primary advisor to senior Center personnel on all budget-related matters. He manages a budget valued at $250 million. He has meetings which vary in frequency and format with the Admiral and Technical Director at Senior Executive Service (SES), Navy Captains, Executive Directors (SES), Comptrollers, business managers and staffs representing the 6 divisions that make up the NSWC. He is responsible for all incoming fund documents from agencies including Navy, Army, Air Force, other Department of Defense (DoD), and other Federal agencies, which provide for NSWC the authority to work. He is responsible for counseling management officials on budget and funds management problems, advising on proposals and decisions and assisting the Comptroller on representing and justifying actions and proposals at Headquarters levels. He has a professional knowledge and skill in the application of budget principles, concepts, methods and techniques.

Hayes's position is classified as a Supervisory Accountant (GS-510-13), otherwise known as Accounting Officer. This involves responsibilities for accounting, dealer invoices, travel and payroll liaison functions and system integration. It also involves meeting with and advising senior managers (grades ranging from GS-12 to SES levels) at IHD-NSWC, NAVSEA/NSWC Headquarters, Department of Finance and Accounting System (DFAS), Government Accounting Office (GAO), Inspector General (IG), Naval Air Station (NAS), Navy Comptroller, and private

industry on financial management issues. It also extends to training employees and serving as senior advisor on all accounting, financial systems, customer service, and payroll.

Sharek, who himself has served as both an Accounting Officer and a Budget Officer during his career, has opined that Hayes's position is not substantially the same as Holden's. He states that:

> based upon my own experiences serving as both an Accounting Officer and as Budget Officer, I do not believe that Ms. Hayes performed substantially the same work as Mr. Holden did with respect to the nature of their positions. The Budget Officer position has more direct interface, on a regular basis, with senior managers on financial management issues. He is senior leadership's primary advisor on all budget-related matters. He monitors the budget, looks at trend analysis, and advises senior leadership of issues involving the budget. Mr. Holden is the subject-matter expert for that area. While Ms. Hayes' position also involved contacts with senior managers both at IHD-NWSC and Headquarters, these contacts were not at the same level as Mr. Holden's, and not with the same regularity.

Most importantly, as already observed, the record in no way supports Hayes's bare assertion that the reason she was paid less than Holden was because of her gender. Holden was paid more because his position involved a higher level of education, skill and responsibility. No probative evidence suggests that this explanation for the difference in pay levels between Holden and Hayes is false. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148-49 (2000); *Price v. Thompson*, 380 F.3d 209, 213-14 (4th Cir. 2004). Hayes, in other words, has produced no evidence that the Navy's legitimate non-discriminatory reason for the pay differential was pretextual.

The Secretary is entitled to summary judgment on the Title VII and Equal Pay Act claims of pay discrimination, Counts II and III.

VIII.

Hayes has not responded to the argument that her retaliation claim should be dismissed. This is understandable since it is clear that Hayes failed to exhaust her administrative remedies relative to that claim. Thus, in her Formal Complaint of Discrimination, hand-delivered on June 17, 2002, she alleged that she was discriminated against under the Equal Pay Act when she was not promoted to a GS-14 level. She also complained that she was re-assigned to Washington Navy Yard which prejudiced her chances for promotion. But there was no suggestion in her complaint that she had engaged in protective activity and because she did so her employer took an adverse employment action against her, both of which are *sine qua non* elements of a retaliation claim. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989).

Exhaustion of administrative remedies is a pre-requisite to bringing a Title VII claim. *See Zografor v. V.A. Med. Ctr.*, 779 F.2d 967, 968-69 (4th Cir. 1985). A federal employee must first pursue her claim before the government agency charged with discrimination. *See* 42 U.S.C. § 2000e-16(c). This requirement extends to claims of retaliation that could have been brought to the agency's attention as opposed to claims of retaliation based on acts that have occurred after the complaint has been filed. *See Riley v. Technical & Management Servs. Corp.*, 872 F. Supp. 1454 (D. Md. 1995) (Williams, J.); *see also McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473 (7th Cir. 1996). In Count IV of her Complaint before this Court, Hayes says that in April 2002 she spoke to William Richardson, who was conducting the "environmental scan" for Sharek, and told him "about problems she was experiencing" in employment. She then says that, on May 21, 2002, she was re-assigned to the Washington Navy Yard. However, Hayes's Formal Complaint of Discrimination was filed on June 17, 2002, almost one month <u>after</u> the alleged protected activity (*i.e.* her conversation with Richardson), and <u>after</u> the alleged retaliation (*i.e.,* her reassignment to the

Washington Navy Yard), meaning that the supposed retaliatory act was known to Hayes at the time she filed the complaint and could have been raised therein.

That she did not raise the retaliation claim at that time means that she failed to exhaust her administrative remedy with respect to it before recurring to this Court. She may not raise the claim at this time.

Hayes' claim of retaliation also goes out on summary judgment. [4]

## VIII.

For all these reasons, the Secretary's Motion for Summary Judgment will be GRANTED. [5]

A separate Order will ISSUE.

|  |  |
|---|---|
|  | /s/ |
|  | **PETER J. MESSITTE** |
| **September 28, 2005** | **UNITED STATES DISTRICT JUDGE** |

---

[4] Were the Court to reach the merits of the retaliation claim, it would be unable to find on this record that Hayes engaged in protected activity or that a causal connection between her meeting with Richardson and her detail to NAVSEA, or that Sharek's reason for detailing her to NAVSEA was not for a legitimate and non-discriminatory reason.

[5] The Secretary's Motion to Dismiss is therefore MOOT.